UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

HARRY G. DONAS,

                    Plaintiff,             17-cv-1802 (JGK)

          - against -                      MEMORANDUM OPINION
                                           AND ORDER
AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES,

                    Defendant.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

      The plaintiff, Harry Donas, brings this action against the
defendant, the American Federation of State, County and
Municipal Employees ("AFSCME"). On January 26, 2017, the
plaintiff filed a Petition in the Supreme Court of the State of
New York, New York County, against AFSCME pursuant to Article 78
of the New York Civil Practice Law and Rules, asserting that
AFSCME violated its constitution. The plaintiff contends that
AFSCME violated its constitution by disciplining him for
recording a meeting in contravention of a motion that had been
improperly adopted contrary to Robert's Rules of Order, which
the constitution required to be followed. On March 10, 2017, the
defendant removed this action to this Court invoking federal
question jurisdiction under Section 301(a) of the Labor
Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). The
defendant has moved for summary judgment dismissing the
plaintiff's claim.

**I.**

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29, 37 (2d Cir. 1994). If the moving party meets its burden, the
nonmoving party must produce evidence in the record and "may not
rely simply on conclusory statements or on contentions that the
affidavits supporting the motion are not credible." Ying Jing
Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The following facts are undisputed unless otherwise
indicated.

The defendant is a national labor organization that
represents more than one million members, the vast majority of
whom work in public service. Def.'s 56.1 Stmt. ¶ 1. AFSCME and
its affiliates are governed by a written constitution ("AFSCME
International Constitution") that sets forth both substantive
and procedural rights and obligations; labor organizations and
their members that are affiliated with AFSCME are bound by the
AFSCME International Constitution. Id. at ¶ 2. Civil Service
Technical Guild, Local 375 ("Local 375") is an affiliated local
union chartered by AFSCME, that represents over 7,000 AFSCME

members who are employees that work for New York City and its various agencies and other municipal entities. Id. at ¶¶ 3-4.

During the period of January, 2016 to August, 2016, the plaintiff served as Local 375's Civil Service Chair and Chapter 8 President and was a member of Local 375's executive committee. Id. at ¶ 5. The plaintiff was financially compensated for holding these offices. Id.

On January 13, 2016, Local 375's executive committee passed a motion to ban the use of audio or video recording devices at Local 375 executive committee meetings by anyone other than Local 375's Public Relations Chair and Recording Secretary. Id. at ¶¶ 10, 14. During the meeting, the Executive Chair of the executive committee had ruled that the motion was out of order, because it was not included on the agenda for the special meeting. Id. at ¶ 11. However, her ruling was overruled. Id. at ¶¶ 12-13.

On March 2, 2016, the plaintiff attended a Local 375 executive committee meeting and used his mobile phone to record the proceedings. Id. at ¶ 18. George Sona, another executive committee member, saw the plaintiff recording the proceedings and asked him to stop. Id. at ¶¶ 19-20. The plaintiff refused. Id. at ¶ 21. Sona and several other members of Local 375's executive committee filed a charge against the plaintiff with the AFSCME Judicial Panel, under Article X, Sections 2(A) and

(F) of the AFSCME International Constitution. Id. at ¶ 22. The members alleged that a motion that "no recording devices . . . should be used by any board member to record the meeting" had passed, but that the plaintiff had refused to turn off his recording device when advised to do so by other board members. Perrow Decl. Ex. C at 31.

Under Article XI, Section 8 of the AFSCME International Constitution, an individual member of the Judicial Panel is appointed by the Judicial Panel Chairperson to serve as the trial officer ("Trial Officer") to adjudicate a charge that has been filed against a union member. Perrow Decl. Ex. A at 125-26. The person bringing the charge to the Judicial Panel is required, under Article X, Section 14(c) of the AFSCME International Constitution, to "assume the burden of proof." Id. at 118. Article XI, Section 5 of the AFSCME International Constitution states that "[t]he Judicial Panel shall establish rules of procedure, which rules shall not be inconsistent with the provisions of this Constitution." Id. at 123. The Preamble to the rules ("Rules of Procedure") states that the Rules of Procedure were established "to carry out the functions and responsibilities of the AFSCME Judicial Panel." Perrow Decl. Ex. B at 3. The AFSCME Judicial Panel "recognizes that it is not a court of law," that it was created to resolve internal union disputes, and that it should do so "in a manner consistent with

trade union principles and without resort to courts and lawyers." Id. Article IV, Section 2 of the Rules of Procedure states that "[t]he Trial Officer shall have the authority, subject to other provisions of these Rules and the International Constitution: . . . (C) to rule on all procedural matters, objections and motions; [and] (D) to rule on all offers of proof and receive relevant evidence[.]" Perrow Decl. Ex. B at 10-11.

An internal union trial on the charge was held before Richard Gollin, the Trial Officer, on June 28, 2016. Def.'s 56.1 Stmt. ¶ 31. At trial, the plaintiff raised several arguments, including that: (1) the motion violated Robert's Rules of Order and was thus improperly passed; (2) the motion violated the New York City wiretapping law; and (3) an earlier AFSCME Judicial Panel decision provided a basis for his refusal to abide by the motion. Perrow Decl. Ex. C at 28-29. The plaintiff candidly admitted that he recorded the meeting: "I had the phone out. It may have been standing up. I don't recall. Brother Sona obviously saw that I was recording the meeting, which I do not deny because the phone – how else would he know? Basically I stipulate to that." Perrow Decl. Ex. D. at 55.

On August 12, 2016, the Trial Officer issued a written decision (the "Trial Decision"), which found that the relevant issue at the trial was not "the legitimacy of the motion but rather, whether the accused had the right to ignore it." Perrow

Decl. Ex. C at 29-30. The Trial Decision noted that "whether or not this motion violates Robert's Rules of Order is not the subject of this hearing," and that the plaintiff's other arguments, regarding the wiretapping law and the previous decision of another Judicial Panel, were also not relevant. Id. at 30. The Trial Decision stated that the plaintiff could have challenged the validity of the motion separately, either on the floor at the next meeting or by filing a charge with the Judicial Panel. Id. Ultimately, the Judicial Panel member concluded that the plaintiff was guilty of the charge filed against him and issued him a formal reprimand, accompanied by a formal warning against any repetition of any acts for which he was found guilty. Id.

On or about September 6, 2016, the plaintiff appealed the Trial Decision to the full AFSCME Judicial Panel. Def.'s 56.1 Stmt. ¶ 38. On September 22, 2016, the full AFSCME Judicial Panel convened to hear from the parties, but neither of the parties appeared. Id. at ¶ 41. On September 30, 2016, the full AFSCME Judicial Panel issued a written decision sustaining the Trial Decision. Id. at ¶ 42. On May 5, 2017, the plaintiff appealed the full AFSCME Judicial Panel's decision to the AFSCME International Convention. Id. at ¶ 46.

On or about January 26, 2017, the plaintiff filed an Article 78 petition in the Supreme Court of the State of New

York seeking to overturn the Trial Decision and the September 30, 2016 written decision of the full ACSFME Judicial Panel.[1] Id. at ¶ 43; Perrow Decl. Ex. C. On March 10, 2017, AFSCME removed the action to this Court.[2] Defs.' 56.1 Stmt. ¶ 44.

In his petition, the plaintiff argues that the Trial Decision and its subsequent affirmation by the Judicial Panel violated AFSCME's International Constitution for four main reasons: (1) the motion passed on January, 13, 2016 was invalid; (2) AFSCME failed to decide similar cases similarly; (3) AFSCME failed to follow its own rules; and (4) the Trial Decision was not supported by substantial evidence. Perrow Decl. Ex. C. at 13-15. He also seeks damages for an amount not less than $22,620.[3] Bank Decl. Ex. E. The plaintiff's calculations for the estimated amount of damages include losing a $7,000 annual stipend for serving as Civil Service Chair, from August 29, 2016 to January 9, 2019. Id.

---

[1] On July 19, 2018, the AFSCME International Convention heard from the plaintiff and from the Convention's Appeals Committee. Def.'s 56.1 Stmt. ¶¶ 51-52; Perrow Decl. Ex. G. On July 23, 2018, the AFSCME International Convention voted to adopt the decision of the full AFSCME Judicial Panel. Def.'s 56.1 Stmt. ¶ 53; Perrow Decl. Ex. H. Accordingly, at the time the plaintiff filed his Article 78 petition in state court, the AFSCME International Convention had not yet decided the plaintiff's appeal of the full AFSCME Judicial Panel decision.

[2] The case was then stayed from May 4, 2017 to September 6, 2018, pending the exhaustion of interunion remedies. Docket Nos. 16, 21-22.

[3] The plaintiff acknowledges that damages were not originally sought in his Article 78 petition. Bank Decl. Ex. E.

The defendant has moved for summary judgment dismissing the plaintiff's claims under the Labor Management Relations Act ("LMRA") Section 301(a).

## III.

### A.

The defendant removed this action to this Court, invoking this Court's federal question jurisdiction, arguing that the plaintiff's claim was subject to exclusive federal jurisdiction under Section 301(a) of the LMRA, 29 U.S.C. § 185. The plaintiff did not seek to remand this case back to state court.[4] Dkt. No. 23. However, he contests that this Court has jurisdiction. The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

---

[4] The pro se plaintiff rightly does not contest removal because the removal of this action to this Court was proper. A defendant may remove an action originally filed in state court if the case originally could have been filed in federal court. See 28 U.S.C. § 1441(a). Absent diversity jurisdiction, the "well-pleaded complaint rule" provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Pursuant to this rule, "removal generally is not permitted simply because a defendant intends to defend the case on the basis of federal preemption." Vera v. Saks & Co., 335 F.3d 109, 113 (2d Cir. 2003) (per curiam). However, "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action" for violation of a covered labor contract. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 23 (1983) (internal quotation marks and citation omitted). A state law claim is preempted by Section 301 of the LMRA when it is "inextricably intertwined with consideration of the terms of a labor contract" and "for preemption purposes, the term 'labor contract' includes union constitutions." Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 178 (2d Cir. 2000) (internal quotation marks and citations omitted). Because the plaintiff alleges that the union breached the AFSCME International Constitution and the analysis of the plaintiff's claims requires interpreting the AFSCME International Constitution's provisions, Section 301 preempts the plaintiff's Article 78 claims.

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)

(citing Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)).

Section 301(a) states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States." 29 U.S.C § 185. It is well established that a union constitution is considered a contract between labor organizations for the purposes of Section 301 and that a union member may sue under Section 301 for alleged violations of a union constitution. See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 99-101 (1991); Rosenthal v. Roberts, No. 04-CV-5205, 2005 WL 221441, at *5 (S.D.N.Y. Jan. 28, 2005). The AFSCME International Constitution is considered a contract between labor organizations for the purposes of Section 301. The record establishes that when the plaintiff filed the petition, he was a union member and that he was suing the defendant for alleged violations of the AFSCME International Constitution.[5]

---

[5] The pro se plaintiff also cites provisions of the Local 375 union constitution in his petition. Perrow Decl. Ex. C at 4. A local union's constitution is a contract made between an individual member and a union, and is thus not considered a contract between labor organizations for purposes of Section 301. See Green v. Brigham, No. 03-CV-190, 2005 WL 280327, at *11 (E.D.N.Y. Feb. 3, 2005) (collecting cases); Johnson v. Kay, 742 F. Supp. 822, 828 n.1 (S.D.N.Y. 1990). Thus, to the extent that the plaintiff is alleging breach of the Local 375 union constitution, this Court does not have jurisdiction to analyze that claim.

In addition, to bring a claim pursuant to Section 301 of the LMRA, the plaintiff must sue as a private employee, rather than an employee of a State or political subdivision thereof.[6] See Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam); Commer v. McEntee, No. 00-CV-7913, 2006 WL 3262494, at *17 (S.D.N.Y. Nov. 9, 2006). Employees of the union itself are considered private employees for the purposes of Section 301. See Commer, 2006 WL 3262494 at *17 (finding that a local AFSCME union president had been employed by the union and was therefore a private employee until he was removed from union office). Employees of the union may be considered private employees, even when they are concurrently employed by a public employer. See Troman v. Am. Fed'n of State, No. 16-CV-6948, 2016 WL 5940924, at *4 (S.D.N.Y. Oct. 13, 2016).

Although the plaintiff is an employee of the City of New York, he was also a private employee of local 375. The plaintiff was compensated by the union for his positions as Local 375's Civil Service Chair, Chapter 8 President, and member of Local 375's executive committee, from at least January, 2016 to August, 2016, the relevant time period during which the recording activity and Trial Decision at issue took place. The

_____

[6] Employees, as defined in the LMRA, 29 U.S.C. § 142(3), include individuals employed by entities that are considered "employers" under 29 U.S.C. § 152(2). "The term 'employer' . . . shall not include the United States or any wholly owned Government corporation . . . or any State or political subdivision thereof." 29 U.S.C. § 152(2).

record suggests that the plaintiff received a stipend of $7,000 per year for serving as Civil Service Chair.[7] The plaintiff is suing the union for alleged violations of the AFSCME International Constitution as a private employee of the union and not as a public employee, and the Court therefore has subject matter jurisdiction over this case.

**B.**

When deciding a claim under Section 301(a) that a union has acted contrary to its own constitution, courts should give the union's interpretation of its own constitution great deference. See Sim v. New York Mailers' Union No. 6, 166 F.3d 465, 470 (2d Cir. 1999). "Federal courts should be slow to rush into . . . matter[s] of internal union governance." Int'l Bhd. of Teamsters v. Local Union No. 810, 19 F.3d 786, 788 (2d Cir. 1994). This is because

> Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by [the LMRDA]. . . . General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations.

---

[7] At oral argument, the plaintiff confirmed that he has continued to serve as Chapter 8 President from August 29, 2016 to the present day and is compensated $1,500 per year by the union in this role.

Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964). Accordingly, a union's interpretation of its own constitution is entitled to great deference and will be upheld unless it is "patently unreasonable" or "made in bad faith." See e.g., Mason Tenders Local Union 59 v. Laborers' Int'l Union of N. Am., AFL-CIO, 924 F. Supp. 528, 543-44 (S.D.N.Y.), aff'd, 101 F.3d 686 (2d Cir. 1996) (table opinion); Brodsky v. Union Local 306, No. 98-CV-2325, 1999 WL 102763, at *3 (S.D.N.Y. Feb. 24, 1999), aff'd, 205 F.3d 1321 (2d Cir. 2000) (table opinion).

**1.**

"An interpretation that conflicts with the stark and unambiguous language of the Constitution or reads out of the Constitution important provisions is a patently unreasonable interpretation of a union Constitution." Local 100, Transp. Workers Union of Greater New York v. Transp. Workers Union of Am., No. 03-CV-3512, 2005 WL 2230456, at *6 (S.D.N.Y. Sept. 13, 2005) (citing Exec. Bd. of Transp. Workers Union of Philadelphia, Local 234 v. Transp. Workers Union of Am., AFL-CIO, 338 F.3d 166, 170 (3d Cir. 2003)) (internal quotation marks omitted). The appropriate inquiry is "limited to whether the union took a position on the basis of an informed, reasoned judgment regarding the merits of the . . . claim" in light of the language contained in the union constitution. Sim, 166 F.3d at 469 (citing Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d

120, 127 (2d Cir. 1998)).

The defendant argues that the four main arguments that the plaintiff raises in his original petition have no merit. The plaintiff first argues that the motion at issue was invalid and therefore, he could not be guilty of violating it, because the AFSCME International Constitution incorporated Robert's Rules of Order ("Robert's Rules") and the motion was not properly ratified under Robert's Rules. Perrow Decl. Ex. A at 132. The plaintiff argues that the motion, in order to be valid, had to be ratified at a regular meeting or a special meeting called for that purpose. Mem. Opp. at 9. However, the Trial Officer found that the issue of the motion's validity was not relevant to the proceeding and that the plaintiff did not have a right to ignore the motion because it was "a legal motion until . . . proven otherwise." Perrow Decl. Ex. C at 30.

It was not patently unreasonable for the Judicial Panel member to limit the scope of the trial to the issue of whether the plaintiff violated the motion, rather than whether the motion itself had been properly ratified. The AFSCME International Constitution requires the Judicial Panel to establish Rules of Procedure. These Rules of Procedure provide the Trial Officer with significant control over the internal union trial proceedings. Under Article IV, Section 2 of the Rules of Procedure, the Trial Officer "shall have the authority

. . . to rule on all procedural matters, objections and motions"
and "to rule on all offers of proof and receive relevant
evidence." Perrow Decl. Ex. B at 10-11. It was reasonable for
the Trial Officer to decide that the motion's validity was not
relevant to the trial on a charge that was limited to the
plaintiff's specific act of violating a motion that was approved
by the Local 375 executive committee. The plaintiff has not
pointed to any provision of the AFSCME International
Constitution that supports the proposition that it was improper
to narrow the issues relevant to trial.

It was also not patently unreasonable for a union to
interpret a motion passed by a vote at a meeting of Local 375's
executive committee to be valid until proven otherwise. The
heart of the Trial Decision–that a member may take steps to
challenge a motion's validity but may not simply ignore the
motion–can be grounded in the reasonable concern that allowing
union members to disobey motions approved by executive
committees, because they believed that the motions were invalid,
would cause chaos and interfere with the union's ability to
operate effectively.

The union's reasoning is analogous to well-established
jurisprudence on the validity of a court order. "The orderly and
expeditious administration of justice by the courts requires
that an order issued by a court with jurisdiction over the

subject matter and person must be obeyed by the parties until it
is reversed by orderly and proper proceedings." <u>Maness v.
Meyers</u>, 419 U.S. 449, 459 (1975) (citing <u>United States v. United
Mine Workers of Am.</u>, 330 U.S. 258, 293 (1947)). Indeed, it is a

> basic proposition that all orders and
> judgments of courts must be complied with
> promptly. If a person to whom a court
> directs an order believes that order is
> incorrect the remedy is to appeal, but,
> absent a stay, he must comply promptly with
> the order pending appeal. Persons who make
> private determinations of the law and refuse
> to obey an order generally risk criminal
> contempt even if the order is ultimately
> ruled incorrect.

<u>Id.</u> at 458; <u>see also</u> <u>United States v. Pescatore</u>, 637 F.3d 128,
144 (2d Cir. 2011) (citing cases) (noting that the defendant did
not have a right to ignore the Court's order for restitution,
even when the order listed an amount greater than what was
owed). The plaintiff had the option to challenge the validity of
the motion in a number of ways, including by challenging the
motion on the floor of the next committee meeting or filing a
charge with the AFSCME Judicial Panel, but chose not to do so.
Instead, the plaintiff violated the motion that was passed, and
in doing so, acted at his peril.

Second, the plaintiff argues that the union failed to
decide similar cases similarly. However, the defendant argues
that the internal union process is not governed by precedent.

Neither of the parties has pointed to any provision in the
Constitution or Rules of Procedure that discusses whether
Judicial Panel decisions have precedential value. In any case,
the decisions that the plaintiff cites in support of his
position do not relate to an individual's failure to comply with
a motion that has been passed by an executive committee.[8] It was
not patently unreasonable for the Trial Officer to refuse to
take into account Judicial Panel decisions that were not
factually analogous. See Local 100, 2005 WL 2230456, at *14
(rejecting argument that decision of union's appeals committee
was patently unreasonable for being inconsistent with prior
appeals committee decisions, when the plaintiff submitted no
factually analogous union appeals committee decisions).

---

[8] The most analogous case the plaintiff cites is the Judicial Panel decision
in Fort et al. v. Forster, Case No. 13-76, which is annexed to his Memorandum
in Opposition. In Fort, a union member was charged with violating a policy
that required him to receive approval from the chapter president before he
could attend executive committee meetings. The Judicial Panel determined that
the policy violated the International Constitution because the Bill of Rights
for union members provides members with the right to "full participation in
the decision-making processes of the union and to pertinent information
needed for the exercise of this right. Attendance at the Local 375 executive
committee meeting is the right of any Local 375 member in good standing." Id.
at 10. Fort is distinguishable because the Judicial Panel addressed a facial
challenge to a policy and held that the policy was unconstitutional under the
International Constitution. See id. at 11. It also involved the infringement
of a substantive right guaranteed to members under the Constitution's Bill of
Rights. In contrast, the plaintiff does not argue that the motion to ban
recording could never be valid under the International Constitution; in fact,
the plaintiff admits that the motion could have been ratified at a subsequent
regular or special meeting. The plaintiff's challenge to the motion turns on
whether the motion was properly ratified in this instance. As the Trial
Officer found, the plaintiff should have complied with the motion until it
was successfully challenged. Furthermore, the conduct that the plaintiff
complained of was a procedural violation of Robert's Rules and not an
infringement of any members' substantive rights under the International
Constitution.

The plaintiff's third argument is that an organization must follow its own rules and therefore, union constitutions are binding on unions and their Locals and unions should apply their rules consistently to cases before them. This argument largely repeats the plaintiff's first argument–that AFSCME failed to follow its constitution by finding him guilty of violating a motion that was not properly ratified consistent with Robert's Rules, which the constitution required; and the plaintiff's second argument–that similar cases should be decided similarly. Neither of the arguments is tenable. Therefore, the plaintiff's third argument provides no reason to find that AFSCME acted unreasonably.

Finally, the plaintiff contends that the union violated Article X, Section 14(c) of the International Constitution because the Trial Officer did not require the person bringing the charge to assume the burden of proof and to prove that the plaintiff recorded the meeting under a substantial evidence standard. Article X, Section 14(c) requires only that "[t]he person bringing the charge shall . . . assume the burden of proof," Perrow Decl. Ex. A at 118, and does not provide what standard of proof governs internal union trials. In any case, it is clear from the transcript of the union proceeding that the plaintiff "stipulated" that he recorded the meeting on March 2, 2016. Thus, the plaintiff's last argument is also without merit

and it was not patently unreasonable for the Judicial Panel member to find the defendant guilty of the charge.

2.

A plaintiff may prove that a union decision was made in bad faith "by demonstrating that a decision was contrary to the International's best interests or was unconscionable or outrageous." Local 100, 2005 WL 2230456, at *14; see also Local Union No. 810, 19 F.3d at 794. "[T]he inquiry into bad faith should be employed where there is evidence that a union official had a 'sinister motive' or intent to benefit personally, such as some pecuniary gain." Mason Tenders Local Union 59 v. Laborers' Int'l Union of N. Am., AFL-CIO, 924 F. Supp. 528, 548 (S.D.N.Y.) (citations omitted).

The union's actions at issue are limited to the Trial Decision and the subsequent affirmation of that decision. In his opposition, the plaintiff lists nine actions by various union members acting against the plaintiff's interests. Seven of these actions occurred after the decision of the Trial Officer on August 12, 2016 and therefore do not relate to whether the union acted in bad faith in reaching the initial decision. Moreover, these seven actions concern internal union grievances, such as the budget deficits and the allocation of membership dues, elections, and a transfer of the plaintiff's office location,

and were unrelated to the Trial Decision or the union's subsequent affirmation of the Trial Decision.

The remaining two actions that the plaintiff mentions occurred prior to August 12, 2016. One states that a union member, who had made the original motion to ban recordings that was passed at the Local meeting on January 13, 2016, had previously accused the plaintiff of a financial cover-up. This action is also unrelated to the Trial Decision and its subsequent affirmation. The second states that Sona, a union member who brought the initial charge against the plaintiff, made disparaging and inappropriate remarks about the plaintiff's appearance a year prior to the Trial Decision. Whether Sona had a sinister motive in bringing the charge against the plaintiff is irrelevant to whether the Trial Officer engaged in bad faith in reaching his decision on the charges before him. The plaintiff has not alleged any activity that suggests that union officials acted in bad faith in interpreting the union constitution and narrowing the scope of issues relevant to the plaintiff's trial or in affirming the Trial Decision. The plaintiff had the opportunity to present his arguments at trial and subsequently exhausted his union remedies by appealing the Trial Decision to the full Judicial Panel and then to the AFSCME International Convention. There is no evidence in the record that suggests that the union officials were inappropriately

influenced by sinister motives or personal gain in reaching
their decisions.

Because the evidentiary record does not support the
plaintiff's contention that the union's trial and appellate
process resulted in a patently unreasonable interpretation of
the union constitution or was conducted in bad faith, the
defendant's motion for summary judgment dismissing the
plaintiff's claims is **granted.**

## CONCLUSION

The Court has considered all of the arguments raised by the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the reasons stated above,
the defendant's motion for summary judgment is **granted.** The
Clerk is directed to enter judgment dismissing the complaint and
closing the case. The Clerk is also directed to close all
pending motions.

**SO ORDERED.**


**Dated:    New York, New York**
**          March 12, 2020**

                              /s/ John G. Koeltl
                          _____
                                John G. Koeltl
                          United States District Judge




*Copy mailed by Chambers to pro se party at docket address